**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TRENT CARR, JR.,

    Petitioner,

                                      Case No. 05-CV-73763-DT

v.                                       Honorable Lawrence P. Zatkoff
                                       United States District Court

MILLICENT WARREN,

    Respondent,

_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS AND MOTION
FOR REMAND AND/OR EVIDENTIARY HEARING**

**I. Introduction**

    Trent Carr, Jr. (Petitioner), a state prisoner presently confined at the Thumb Correctional Facility in Lapeer, Michigan, has filed a *pro se* petition for writ of habeas corpus asserting that he is being held in violation of his constitutional rights. On March 15, 1999, Petitioner was convicted of first-degree murder, armed robbery, kidnapping, carjacking, and possession of a firearm during the commission of a felony, following a jury trial in the Genesee County circuit court. Petitioner was sentenced to life imprisonment for the first-degree conviction, fifteen to thirty years for the armed robbery conviction, twenty-five to fifty years for the kidnapping conviction, twenty-five to fifty years for the carjacking conviction, and the mandatory two-years imprisonment for the felony-firearm conviction.

    Petitioner raises the following claims: (1) the trial court erred in denying his motion for a separate trial from co-defendant Reginald White; (2) the trial court erred in refusing to suppress his involuntary confession; (3) the trial court erred in admitting photographs of the deceased into

evidence; (4) the trial court error in denying his motion for a directed verdict concerning the lack of evidence for the convictions of armed robbery, kidnapping and carjacking; (5) the trial court erred in imposing his sentence; (6) the trial court erred in denying the motions to quash the information and for directed verdict concerning the charge of first-degree premeditated murder, where there was no evidence of premeditation and deliberation; (7) violation of his Fourth Amendment rights; (8) ineffective assistance of trial and appellate counsel; and (9) his right to remand for an evidentiary hearing. For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

## II. Factual Background Underlying Petitioner's Convictions

Petitioner's convictions stem from the homicide of seventy-three-year-old Felix Bessolo on July 16, 1998, in Flint, Michigan. The police found Bessolo's body in an abandoned car in the city of Detroit, Michigan. Bessolo was shot in the chest and the arm, stuffed into the trunk of his car and driven to Detroit, where he was stabbed multiple times, and then left. Petitioner and co-defendant, Reginald White, were charged with the crime. They were tried jointly, but with separate juries, in the Genesee County circuit court. At trial, certain witnesses were examined before both juries; others were examined before the jury selected to hear only one particular defendant's case. Petitioner's jury found him guilty of all charges.

The first witness to testify was Dotsie Signer, Mr. Bessolo's mother-in-law. She said that she saw Mr. Bessolo on the date of his death when he came to her home to repay some money that he owed her. She said that after he had given her the money, he left the house in a hurry. Later that day, Ms. Signer spoke with her daughter, Barbara Bessolo, about her husband. Ms. Signer admitted that she knew her daughter had a drug problem.

Detroit Police Officer Kermit Jackson testified that on July 17, 1998, he received a call from

dispatch reporting an abandoned vehicle. Jackson, along with his partner, Officer Nancy Gulley, responded. When they arrived, they saw the abandoned vehicle, opened the trunk, and discovered Bessolo's body. Officer Gulley corroborated Officer Jackson's testimony regarding the description of events surrounding that police run.

Sergeant Kim Mackie-Austin, a supervisor from the Detroit Police Department, testified that she, too, was called to the scene, where Mr. Bessolo was found. When she arrived, she directed the other officers to look for witnesses and to secure statements if possible. She also called for tracking dogs to come to the scene. Upon arriving at the scene, the dogs led the officers to a vacant building, where they found the battery to the Mr. Bessolo's car. The Detroit Police Department evidence technician, Mary Urbanczyk, testified about the condition of the crime scene when she arrived. She also took photographs of the vehicle and the victim, and made drawings of the scene, which were all admitted into evidence over the defense's objections.

Barbara Bessolo, the wife of the deceased, also testified. She admitted to having a drug problem. She testified that she had heard that her husband was going to pay her drug debt on the date of his death. She said that she owed money to both Petitioner and co-defendant White, and that she knew them for about six months. Ms. Bessolo admitted that she knew that her husband had paid her drug debts to them on four previous occasions. Ms. Bessolo testified that before her husband left that day, she paged co-defendant White's mother's pager. When co-defendant White's mother answered, the Mr. Bessolo talked to her. Shortly after that conversation, Mr. Bessolo left home. Ms. Bessolo also left the house to smoke crack cocaine.

Ms. Bessolo returned home at 9:30 p.m., only to find that her husband had not yet returned home. She then took some money left again to smoke more crack cocaine. At approximately 11:30

p.m., Ms. Bessolo returned home a second time and again, found that her husband was not yet home. Consequently, Ms. Bessolo went and smoked more crack cocaine. When Ms. Bessolo returned home for the third time, at approximately 4:00 a.m., she discovered that her husband was still not home and became alarmed. At 8:00 a.m. that morning Ms. Bessolo called the sheriff's department to report that her husband and his car were missing.

On cross-examination by Petitioner's attorney, Ms. Bessolo changed her story and said that she only knew Petitioner for two months prior to the incident. She said that she never had large debts with either Petitioner or co-defendant White. Ms. Bessolo's testified that she purchased her drugs from Darrian Neal, who lived with Petitioner and co-defendant White. She admitted that she heard that her husband gave Petitioner and co-defendant White a bad check, but said that she had told them that she would make good on the check. Ms. Bessolo further stated that she inquired about her husband at Petitioner's house the morning that he left to pay her drug debt. She spoke to Darrian Neal, who told her that Mr. Bessolo was not there. On cross-examination, Ms. Bessolo testified that she was the one who contacted the Detroit Police Department and gave them the identities of Petitioner and co-defendant White.

Officer Donald Stewart of the Genesee Township Police Department testified he took the statement from Ms. Bessolo when she called the sheriff's department. Officer Stewart entered the information that Mr. Bessolo and his car were missing into the system, which in turn led to the discovery of the body and car. When Sergeant Arlie Lovier of the Detroit Police Department called Officer Stewart after the body was found, Officer Stewart told Sergeant Lovier about his conversation with Barbara Bessolo.

Darrian Neal, who lived with Petitioner and co-defendant White, testified that he saw the

deceased come to the house to pay the drug debt for his wife. Over objection by the defense, Neal said that co-defendant White told him that Petitioner was going to shoot Felix Bessolo because he owed them money. Neal testified that he was upstairs when the deceased came to the house on the day in question. He did not hear any conversation, but did hear two shots being fired. Neal said that he saw Petitioner holding and punching the deceased, and that Petitioner and co-defendant White put Mr. Bessolo in his car. Petitioner and co-defendant White then gave Neal the gun and told him to get rid of it. Initially, Neal told the police that he threw the gun away. However, two days later, Neal talked to the police and later gave the gun to the police.

Ronald David Crichton, a ballistics expert from the Michigan State Police lab, testified that he had identified a revolver and fired cartridge cases; he indicated that the retrieved bullets were fired from the gun. He also testified that the gun was fired less than twenty-five inches from the victim. The Wayne County Assistant Medical Examiner, Dr. John Scott Somerset, conducted the autopsy of Mr. Bessolo. He testified that Mr. Bessolo had gunshot wounds and stab wounds. Based on his examination, Dr. Somerset concluded that the Mr. Bessolo died from the gunshot wounds.

Finally, Petitioner testified. He stated that he knew Barbara Bessolo due to her drug purchases at co-defendant White's home. Petitioner met Mr. Bessolo on the occasions he paid his wife's drug debts. Petitioner testified that on the day of the homicide, he knew that Mr. Bessolo was coming to co-defendant White's house. On that day, Petitioner recognized Mr. Bessolo and the car that he was driving. According to Petitioner, after Mr. Bessolo had paid the drug debt, he and Petitioner got into an altercation, resulting in Mr. Bessolo being shot twice; Petitioner claimed that the gun went off accidentally. Petitioner said that he panicked, and called for co-defendant White, who was upstairs. Thereafter, Petitioner and co-defendant White put Mr. Bessolo in the trunk of his

car. Petitioner and co-defendant White then drove the car to Detroit with Mr. Bessolo in the trunk. When the pair arrived in Detroit, they discovered that Mr. Bessolo was still alive. Petitioner said that he then left the area with co-defendant White's girlfriend.

On cross-examination, Petitioner testified that he lived with co-defendant White and Neal for about one month. It was his testimony that he never sold drugs to Ms. Bessolo. He admitted that he was armed with a loaded gun on the date of the incident in question. He also admitted that he was face-to-face with the deceased, arguing with him about his wife's drug debts. Petitioner was apprehended several days later and gave a statement to the police. The jury found Petitioner guilty of all charges.

### III. Procedural Facts

Following sentencing, Petitioner, through counsel, filed an appeal as of right to the Michigan Court of Appeals asserting the following claims:

I.      Defendant was denied a fair trial when the trial court refused to grant his motion for severance and elected to hold a joint trial with separate juries which unduly prejudiced the defendant's right to a fair trial.

II.     Defendant was denied his constitutional right to a fair trial by the trial court's refusal to suppress his involuntary confession.

III.    The trial court abused its discretion by admitting into evidence several photographs of the deceased where the proofs were accumulative and unnecessary as proof on any material issue but were intended to inflame the prejudices and passions of the jury.

IV.     The trial court erred in denying defendant's motions for directed verdict where the proofs failed to establish elements necessary for convictions for armed robbery, kidnapping, and carjacking.

V.      The trial court erred in sentencing Defendant Carr to

imprisonment for first-degree-premeditated murder and felony murder.

VI.    The trial court erred when it denied the defendant-appellant's motion to quash the information and for directed verdict because the examining magistrate abused his discretion in binding the defendant over for trial on first-degree murder when there was no evidence introduced at the preliminary examination on the elements of premeditation and deliberation.

The Michigan Court of Appeals affirmed Petitioner's convictions. *See People v. Carr*, No. 219074, 2001 WL 1134904 (Mich.Ct.App. Sept. 21, 2001). Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Carr*, 465 Mich. 962, 640 N.W.2d 876 (2002).

On August 22, 2002, Petitioner filed a motion for relief from judgment pursuant to M.C.R. 6.500 *et. seq.*, in the trial court and presented the following claims:

I.    The defendant's warrantless arrest violated his Fourth Amendment right and any inculpatory statements made by the defendant were tainted by the illegal arrest notwithstanding the *Miranda* warning that was given, the statement should not have been admitted due to the official misconduct by police and that the admission of same denied the defendant a fair trial requiring reversal of his convictions.

II.    The defendant was denied effective assistance of trial counsel and appellate counsel, as a result of counsel's failure to argue the illegal arrest of the defendant which resulted in the inculpatory statement defendant made.

The trial court denied the motion. *See People v. Carr*, No. 98-3315-FC, (Genesee County Circuit Court, Dec. 12, 2002). Petitioner thereafter filed applications for leave to appeal with the Michigan Court of Appeals and the Michigan Supreme Court respectively. Both state courts denied leave. *See People v. Carr*, 471 Mich. 945, 690 N.W.2d 105 (2004); *People v. Carr*, No. 251014

(Mich.Ct.App. Mar. 11, 2004);

Subsequently, Petitioner filed the instant application for a writ of habeas corpus on November 17, 2005. As grounds for the writ of habeas corpus, Petitioner raises the following claims:

I.      Petitioner was denied a fair trial when the trial court refused to grant his motion for severance and elected to hold a joint trial with separate juries which unduly prejudiced the Petitioner's right to a fair trial.

II.     Petitioner was denied his constitutional right to a fair trial by the trial court's refusal to suppress his involuntary confession.

III.    The trial court abused its discretion by admitting into evidence several photographs of the deceased where the proofs were cumulative and unnecessary as proof of any material issue but were intended to inflame the prejudices and passions of the jury.

IV.    The trial court erred in denying Petitioner's motions for directed verdict where the proofs failed to establish elements necessary for convictions of armed robbery, kidnapping, and carjacking.

V.     The trial court erred in sentencing Petitioner to imprisonment for first-degree murder and felony murder.

VI.    The trial court erred when it denied Petitioner's motions to quash the information and for directed verdict because the examining magistrate abused his discretion in binding Petitioner over for trial on first-degree murder when there was no evidence introduced at the preliminary examination on the elements of premeditation and deliberation.

VII.   Petitioner's warrantless arrest violated his Fourth Amendment rights and any inculpatory statements made by Petitioner while custody were tainted by the illegal arrest notwithstanding the *Miranda* warning that was given, and misconduct by the police, the admission of the official statement denied Petitioner a fair trial requiring reversal of his conviction.

VIII.  Petitioner was denied effective assistance of trial and appellate counsel, as a result of counsel's failure to argue the illegal arrest of Petitioner which resulted in the inculpatory statement made by Petitioner.

Petitioner has also filed a motion to remand to the trial court for an evidentiary hearing regarding his ineffective assistance of counsel claims, and/or requesting the same in this Court.

## IV.  Analysis

### A.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535

U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**B. Claim I–Severance of Trial Issue**

Petitioner's first claim is that he was denied a fair trial when the trial court failed to grant his motion to sever his trial from that of co-defendant White. Petitioner contends that the trial of this case, with dual juries, failed to protect his rights to a fair trial.

As a general rule, joint trials are favored. *United States v. Dempsey*, 733 F.2d 392, 298 (6th Cir. 1984), *cert. denied*, 469 U.S. 983 (1984). A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from that of his co-defendant's bears a very heavy burden. *United States v. Horton*, 847 F.2d 313, 316 (6th Cir. 1988). The United States Supreme Court has held that joint trials "play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Joint trials promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* at 210. A severance should be granted only "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Phillips v. George Million*, 374 F.3d 395, 398 (6th Cir. 2004). *See also Zafiro v. United States*, 506 U.S. 534 (1993). Accordingly, a habeas court cannot grant relief unless a petitioner establishes that the failure to grant a severance rendered his trial fundamentally unfair. *Jenner v. Class*, 79 F.3d 736, 741 (8th Cir. 1996).

In this case, the Michigan Court of Appeals, the last court to issue a reasoned decision, found that Petitioner failed to demonstrate the type of prejudice that would necessitate severance. It stated in pertinent part:

> A defendant does not have an absolute right to a separate trial, and strong policy favors joint trials in the interest of judicial economy. *People v. Etheridge*, 196 Mich App 43, 52; 492 NW2d 490 (1992). Severance is mandated under MCR 6.121(C) only when

a defendant demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. *Hana*, *supra*. Severance is required where the defenses are mutually exclusive or irreconcilable, not merely where they are inconsistent. *Id.* at 349. In addition, severance is mandated only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that "clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Id.* at 346. The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, precludes reversal of a joinder decision. *Id.* at 346-347.

Here, defendant and White's joint trial involved numerous witnesses and substantially identical evidence. To hold two trials on these substantially identical cases would have been unnecessarily duplicative and excessive. As such, the interests of justice, judicial economy and orderly administration clearly called for a joint trial. Further, each defendant had a separate jury and each jury was excused when appropriate in order to avoid prejudice because of potentially antagonistic defenses. We have approved the use of dual juries to avoid problems in joint trials of defendants with antagonistic defenses. *People v. Greenberg*, 176 Mich App 296, 304; 439 NW2d 336 (1989); *People v. Brooks*, 92 Mich App 393, 396-397; 285 NW2d 307 (1979).

Moreover, defendant failed to submit an affidavit or make an offer of proof that persuasively demonstrated that his substantial rights were prejudiced. In fact, defendant failed to sufficiently explain, in the trial court or on appeal, what evidence caused him to suffer the type of prejudice that necessitates severance. "Incidental spillover prejudice, which is almost inevitable in a multidefendant trial, does not suffice." *Hana*, *supra* at 349 (citation omitted). Finally, the trial court instructed defendant's jury separately, and instructed the jurors concerning reasonable doubt and the determination of guilt or innocence on an individual basis. Defendant is not entitled to a new trial on the basis of the trial court's refusal to sever his trial from codefendant White's.

*People v. Carr*, No. 219074, slip op. at 1-2.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision on this issue is neither contrary to federal law nor an unreasonable application of the law or the

facts. The trial court acted within its discretion in concluding that severance was not warranted. Moreover, Petitioner has not established that he was prejudiced by the trial court's decision. He has not presented any evidence, other than his own conclusory statements, regarding the issue of severance. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See*, *e.g.*, *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions and conclusory allegations do not provide a sufficient basis for an evidentiary hearing in habeas proceedings). Hence, Petitioner has not shown that the denial of the request for severance deprived him of a fair trial. Therefore, habeas relief is not warranted on this claim.

## C. Claim II–Petitioner's Statement to the Police

Petitioner next alleges that he is entitled to habeas relief because his statement to the police after he was apprehended was not voluntary, but was instead induced by threats and appeals to sympathy. Respondent contends that the Michigan Court of Appeals correctly determined that the challenged statement was admissible because Petitioner made the statement spontaneously and not in relationship to any threats.

In order to protect the individual's Fifth Amendment privilege against self-incrimination, law enforcement officials must warn the subject before a custodial interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Miranda v. Arizona*, 384 U.S. 436, 478-479 (1966). *Miranda* rights may be waived if the waiver is voluntary, knowing, and intelligent; that is, the product of free choice rather than intimidation, and with full awareness of the nature of the right being relinquished and the consequences. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Whether such a waiver occurred is

-13-

determined under the totality of the circumstances. *Id.* When determining whether a waiver was made voluntarily and knowingly, a court should consider factors such as: (1) the presence of police coercion; (2) the length of interrogation; (3) the location of interrogation; (4) the continuity of interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and (8) whether the suspect was advised of his *Miranda* rights. *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004). Of these factors, "[c]oercive police activity is a necessary element for finding that a confession was involuntary." *Id.*

In regard to this issue, the Michigan Court of Appeals stated in pertinent part:

> Next, defendant claims that the trial court erred in denying his motion to suppress because his statement was not voluntary, but induced by police threats and appeals to sympathy. Whether a defendant's statement was knowing, intelligent, and voluntary is a question of law that a court evaluates under the totality of the circumstances. *People v. Cheatham*, 453 Mich. 1, 27, 44; 551 NW2d 355 (1996). Deference is given to the trial court's assessment of the weight of the evidence and credibility of the witnesses, and the trial court's findings of fact will not be disturbed unless they are clearly erroneous. *People v. Sexton (After Remand)*, 461 Mich. 746, 752; 609 NW2d 822 (2000).

> Statements of an accused made during custodial interrogation are inadmissible unless the accused has voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Miranda v. Arizona*, 384 U.S. 436, 444; 86 S Ct 1602, 1612; 16 L.Ed.2d 694 (1966). The prosecutor must establish a valid waiver by a preponderance of the evidence. *People v. Abraham*, 234 Mich.App 640, 645; 599 NW2d 736 (1999). Whether a statement was voluntary is determined by examining police conduct, while the determination whether it was made knowingly and intelligently depends in part upon the defendant's capacity. *People v. Howard*, 226 Mich.App 528, 538; 575 NW2d 16 (1997). In determining whether a statement was admissible, this Court considers the totality of the circumstances surrounding the making of the statement to determine whether it was freely and voluntarily made in light of the factors set forth in *People v. Cipriano*, 431 Mich. 315, 334; 429 NW2d 781 (1988).

Here, the record does not support defendant's contention that his statement was not voluntary. The officer who took defendant's statement testified at the evidentiary hearing that defendant was not threatened. The trial court believed the officer's testimony, and there was no evidence indicating the contrary. Defendant did not testify at the hearing, but indicated in his statement that he was not threatened. There was likewise no evidence that defendant was abused, or deprived of sleep, food, or drink. Although defendant was cuffed to a chair for over an hour before his interview, there was no evidence that the particular restraint caused physical abuse. Further, defendant was advised of his *Miranda* rights before he was questioned and indicated that he understood those rights. The interview was conducted in the interviewing officer's office and was not prolonged. The officer's entire contact with defendant, including the time for the interview and reviewing defendant's statement, lasted approximately one and a half hours. With regard to defendant's personal circumstances, the record shows that he was nineteen, had a twelfth grade education, and that, although he became emotional and cried at times, he was not extremely distraught such that he was not operating of his own free will. Viewing the totality of the circumstances, the record does not leave us with a firm and definite conviction that a mistake has been made. Thus, the trial court did not clearly err in denying defendant's motion to suppress his statement given to the police.

*People v. Carr*, No. 219074, slip op. at 2-3.

Having reviewed the record, the Court is convinced that the state courts' determination that Petitioner's confession was voluntary is neither contrary to United States Supreme Court precedent nor an unreasonable application of the law to the facts. Petitioner knowingly and intelligently waived his *Miranda* rights and voluntarily made inculpatory statements to the police.

At the evidentiary hearing held on this issue before the start of trial, Detroit Police Sergeant Arlie Lovier testified that he interviewed Petitioner at the police station. He said that Petitioner had been in police custody, handcuffed to a chair, for four and a half hours before he interviewed him. It was Sergeant Lovier's testimony that he read Petitioner his *Miranda* rights, a copy of which was given to Petitioner for him to read along with the Sergeant. Petitioner initialed each of the "rights"

as the Sergeant read them to him.  When Sergeant Lovier then asked Petitioner if he understood each right, Petitioner indicated that he did understand.  Petitioner told Sergeant Lovier that he had graduated from high school and that he understood English.

Sergeant Lovier testified that he did not trick, lie to, or physically or emotionally abuse Petitioner in order to obtain his statement.  When asked if he knew why he had been brought to the station, Petitioner replied that he did not.  Sergeant Lovier then showed Petitioner several Polaroid photos and asked Petitioner to look at them because that was the reason that he was there.  Petitioner looked at the photos, depicting the victim's body in the trunk of the car, and began to cry.

As Sergeant Lovier questioned Petitioner, he took notes in the form of a statement, which Petitioner reviewed at the end of the interview.  Petitioner initialed each question and each response.  In response to Sergeant Lovier's question as to what happened to the deceased in this case, Petitioner responded that he shot him twice–once in the chest and once in his left arm.

At the end of the interview, and in writing, Sergeant Lovier asked Petitioner whether he was drunk or high on drugs, and whether anyone threatened him.  Petitioner responded "no" to both questions; he initialed the question and the answer as written.  Petitioner also signed his name to the bottom of each page.  Sergeant Lovier testified that Petitioner never asked for an attorney, nor did he indicate that he wanted to stop answering questions.

The state court found the police testimony credible as to the circumstances giving rise to Petitioner's statement.  The credibility of witnesses and whether in fact the police engaged in coercive activity fall within the category of issues to which the presumption of correctness is applied.  *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (deferring to state court's finding that police officer testimony regarding voluntariness of statement was credible).  Federal habeas

courts do not redetermine the credibility of witnesses whose demeanor has been evaluated by state court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Petitioner has not rebutted this presumption with clear and convincing evidence.

Accordingly, having scrutinized the relevant factors, the Court is satisfied that Petitioner's police statement was voluntary and that his constitutional rights were not violated by its admission into evidence at trial. The Michigan Court of Appeals' decision regarding this issue was not contrary to or an unreasonable application of Supreme Court precedent. Therefore, habeas relief is not warranted on this claim.

## D. Claim III–Admission of Photographs

Petitioner next alleges that the photographs of the deceased that were introduced at trial should not have been admitted because they were excessive, inflammatory, and did not aid the jury in any manner. The Michigan Court of Appeals rejected this argument. It stated:

> Defendant also argues that the trial court abused its discretion in admitting photographic evidence of the victim. We review a trial court's decision to admit photographic evidence for an abuse of discretion. *People v. Mills*, 450 Mich. 61, 76; 537 NW2d 909 (1995), modified 450 Mich. 1212 (1995); *People v. Ho*, 231 Mich.App 178, 187; 585 NW2d 357 (1998). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court reacted, would say there was no justification or excuse for the ruling made. *People v. Beckley*, 434 Mich. 691, 711; 456 NW2d 391 (1990); *People v. Rice (On Remand)*, 235 Mich.App 429, 439; 597 NW2d 843 (1999).

> Photographs that are calculated solely to arouse the sympathies and prejudices of the jury may not be admitted. *Howard*, *supra* at 549. The question is whether photographs are relevant under MRE 401 and, if so, whether their probative value is substantially outweighed by the danger of unfair prejudice under MRE 403. *Mills*, *supra* at 66. Here, the photographs were relevant to show the method in which the victim was murdered, disposed of, and transported, as well as being instructive in depicting the

-17-

> location, nature and extent of the victim's injuries. *People v.*
> *Williams*, 422 Mich. 381, 392; 373 NW2d 567 (1985); *People v.*
> *Flowers*, 222 Mich.App 732, 736; 565 NW2d 12 (1997). The fact
> that defendant did not dispute that the victim was shot does not
> render the photographs inadmissible. See *People v. Schmitz*, 231
> Mich.App 521, 534; 586 NW2d 766 (1998). Moreover, relevant
> photographs are not rendered unfairly prejudicial simply because
> they are gruesome, vivid or shocking. *Mills*, *supra* at 76. The trial
> court did not abuse its discretion in admitting the photographic
> evidence.

*People v. Carr*, No. 219074, slip op. at 3.

An issue concerning the admissibility of evidence or error in state procedure does not rise

to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner was

denied a fundamentally fair trial. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert. denied*, 125

S.Ct. 126 (2004). To determine whether the admission or inadmissibility of evidence has denied

a defendant's fundamental due process rights, the court should consider the extent to which the

evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the

evidence bears "persuasive assurances of trustworthiness." *Turpin v. Kassulke*, 26 F.3d 1392, 1396

(6th Cir. 1994) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 297, 302 (1973)).

As noted by the Michigan Court of Appeals, Petitioner has failed to cite to any federal

precedent or law to support his claim that the photographs of the victim should not have been

admitted into evidence at trial. That state court found, "the photographs were relevant to show the

method in which the victim was murdered, disposed of, and transported, as well as being instructive

in depicting the location, nature, and extent of the victim's injuries." *People v. Carr*, No. 219074,

slip op. at 3. The United States Supreme Court has stated that § 2254 poses a highly deferential

standard for evaluating state court rulings that demands that state court decisions be given the

benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19 (2002). Under this standard, it cannot be

-18-

said that the state appellate court's decision that the evidence was admissible was contrary to, or an unreasonable application of, federal law. Petitioner did not stipulate that the victim was shot and stabbed or to extent of the victim's injuries; instead Petitioner merely did not contest the fact that Mr. Bessolo was shot. Thus, the photographs were highly probative of the method of the murder, the nature and extent of the victim's injuries and the location where the body was found.

Furthermore, the mere fact that Petitioner did not contest the manner of Mr. Bessolo's death did not render the photographs unduly prejudicial. The photographs were not cumulative and the government was entitled to present its case in the most effective way it could. *See Old Chief v. United States*, 519 U.S. 172, 187 (1997). As such, the state courts' determination that the evidence was admissible was not contrary to, or an unreasonable application of, clearly established federal law. Consequently, Petitioner is not entitled to habeas relief in regard to this claim.

### E. Claim IV–Sufficiency of the Evidence

Petitioner contends that he is entitled to a writ of habeas corpus because the evidence presented at trial was insufficient to support his convictions for carjacking, kidnapping, and armed robbery, and thus, the trial court should have granted his motion for a directed verdict. In regard to the carjacking claim, Petitioner asserts that the prosecution failed to prove that the victim's car was taken by force. With respect to the kidnapping claim, Petitioner alleges there was insufficient evidence to prove that the movement of the victim was not merely incidental to the underlying murder, in that they were disposing of the body rather than kidnapping him. Finally, Petitioner argues that the prosecution failed to prove there was an armed robbery because the two hundred dollars taken from the victim was money he owed to him and co-defendant White. The Michigan Court of Appeals rejected each of petitioner's arguments.

A claim that the evidence was insufficient to convict a petitioner is cognizable under 28 U.S.C. § 2254. Because the Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," *Fiore v. White*, 531 U.S. 225, 228-29 (2001), "a state-law question regarding the elements of the crime predicates the enforcement of [petitioner's] federal constitutional right." *Richey v. Mitchell*, 395 F.3d 660, 672 (6th Cir. 2005).

Sufficient evidence supports a conviction if, after viewing the evidence (and all inferences to be drawn therefrom) in a light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1148 (2004). This standard of review obviously does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Circumstantial evidence may support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Clifford v. Chandler*, 333 F.3d 724, 728 (6th Cir. 2003), *cert. denied*, 124 S.Ct. 1601 (2004); *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

In this case, the trial-court record contains overwhelming evidence that Petitioner committed the crimes of carjacking, kidnapping, and armed robbery. As the state appellate court noted:

> Here, the testimony, if believed, was sufficient for a rational
> trier of fact to find the necessary elements, including a taking by

force or violence, were proved beyond a reasonable doubt. There was evidence that defendant shot the victim, struck him several times, placed him into the trunk of a car, and closed the compartment, which supports a finding of force or violence. There is no requirement that the force or violence be done with the intent of taking the motor vehicle. *See People v. Davenport*, 230 Mich.App 577, 578-579; 583 NW2d 919 (1998). Further, after defendant and White forced the victim into the trunk of his car, they drove the victim's car from Flint to Detroit. While en route to Detroit, they stopped, opened the trunk, assaulted the victim further, left him in the trunk, and continued to their destination. Viewed in a light most favorable to the prosecution, sufficient evidence was presented to allow a rational trier of fact to conclude that the essential elements of carjacking were proved beyond a reasonable doubt.

With regard to the kidnapping conviction, defendant contends that there was insufficient evidence to prove that the movement of the victim was not merely incidental to the underlying crime of murder because he "thought they were getting rid of a dead body." A person can be convicted of kidnapping if it is proved beyond a reasonable doubt that the person wilfully, maliciously, and without lawful authority forcibly or secretly confined or imprisoned any other person within this state against the other person's will. MCL 750.349. To establish the necessary element of asportation, there must be some movement of the victim taken in furtherance of the kidnapping that is not merely incidental to the commission of another underlying lesser or coequal crime, *unless* the underlying crime involves murder, extortion, or taking a hostage. *People v. Wesley*, 421 Mich. 375, 388; 365 NW2d 692 (1984); *Green, supra* at 697. An asportation of the victim incidental to an underlying crime of murder is sufficient asportation for a kidnapping conviction. *Wesley, supra*. Thus, defendant's claim is unpersuasive.

With regard to the armed robbery conviction, defendant argues that the evidence was insufficient because "[t]he $200 that was taken was money the deceased owed the Defendants." To prove armed robbery, the prosecutor must prove an assault, a felonious taking of property from the victim's presence or person, while the defendant is armed with a dangerous weapon described in the statute. MCL 750.529. Armed robbery is a specific intent crime, and the prosecutor must establish that the defendant intended to permanently deprive the owner of property. *People v. King*, 210 Mich.App 425, 428; 534 NW2d 534 (1995).

> Here, there was evidence that, while the victim was alive in
> the trunk, defendant reached into his pocket, took $200, and
> later gave the money to White. This evidence, if believed, established
> that defendant took the victim's property without his consent and
> carried it away. See *People v. Malach*, 202 Mich.App 266, 270; 507
> NW2d 834 (1993). Further, defendant's act of giving the money to
> White shows an intent to permanently deprive the victim of his
> property. Accordingly, viewed in a light most favorable to the
> prosecution, sufficient evidence was presented to allow a rational
> trier of fact to conclude that the essential elements of armed robbery
> were proved beyond a reasonable doubt.

*People v. Carr*, No. 219074, slip op. at 4.

Given the trial court record, the Michigan Court of Appeals' resolution of Petitioner's

sufficiency claim was not contrary to, or an unreasonable application of, clearly established federal

law. Therefore, Petitioner is not entitled to habeas relief on this claim.

## F. Claim V–Sentencing/Double Jeopardy

Petitioner next claims that he is entitled to habeas corpus relief because the trial court erred

in sentencing him to imprisonment for first-degree murder and felony murder. Respondent

contends that Petitioner's claim is barred by procedural default.

Procedural default is not a jurisdictional bar to a review of the merits of a habeas petition.

*See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (citing *Trest v. Cain*, 522 U.S. 87, 89

(1997)). Consequently, a federal court is not required to address a procedural default issue before

ruling against a habeas petitioner on the merits of his claims. When a procedural default issue

presents a more complicated question and is unnecessary to the disposition of the case, a court may

proceed directly to the merits of the petitioner's claims in the interest of judicial economy. *See*

*Lambrix v. Singleterry*, 520 U.S. 518, 525 (1997). In the present case, resolving the procedural

default issue will be more complex than deciding the substantive claims on habeas review and will

require some consideration of the merits of those claims. Accordingly, in the interests of judicial economy, the Court will address the merits of Petitioner's habeas claims without ruling on the procedural default issue.

Because Petitioner did not raise this issue in the trial court, the Michigan Court of Appeals reviewed the claim for plain error. The court of appeals stated:

> The double jeopardy guarantees in the federal and state constitutions protect a defendant from multiple punishments for the same offense. US Const, Am V; Const 1963, art 1, § 15; *People v. Torres*, 452 Mich. 43, 64; 549 NW2d 540 (1996). Where dual convictions of first-degree premeditated murder and first-degree felony murder arise out of the death of a single victim, the dual convictions violate double jeopardy. *People v. Bigelow*, 229 Mich.App 218, 220-222; 581 NW2d 744 (1998). In this case, however, the trial court did not sentence defendant to imprisonment for both first-degree premeditated murder and first-degree felony murder. Rather, the Judgment of Sentence provides that defendant was found guilty of first-degree premeditated murder, and lists felony murder as an alternative to the first-degree murder conviction and sentence. As such, the Judgment of Sentence reflects a single sentence for a crime that was supported by two separate theories. Defendant has not demonstrated a plain error that affected his substantial rights.

*People v. Carr*, No. 219074, slip op. at 5-6.

The Court finds that the record supports the trial court's and the Michigan Court of Appeals' determinations. Petitioner is unable to demonstrate a fundamental miscarriage of justice because, in fact, double jeopardy was not implicated given that he was only sentenced for first-degree premeditated murder. "The Double Jeopardy Clause protects against ... multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)) (internal quotation marks omitted). The first-degree felony murder claim is listed in the Judgment of Sentence as an alternative to the first-degree

premeditated murder conviction. Accordingly, Petitioner's sentence reflects a single sentence for a crime that was supported by two alternative theories. Therefore, the Court finds that the state court adjudications were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## G. Claim VI–Insufficient Evidence to Bind Over for Trial

Petitioner contends that the trial court erred in denying his motion to quash the information for directed verdict because the magistrate erred in binding him over for trial on first-degree murder where there as no evidence introduced at his preliminary examination regarding the elements of premeditation and deliberation. Petitioner's claim is without merit given that the prosecution is not required to present evidence regarding premeditation and deliberation during the preliminary examination to support a bindover on a charge of open murder. *People v. Coddington*, 188 Mich.App. 584, 593-594, 470 N.W.2d 478 (1991).

However, even if the prosecutor was required to present evidence regarding premeditation and deliberation at the preliminary examination, Petitioner's claim would not be cognizable in a federal habeas corpus court. In the State of Michigan, the preliminary examination is solely the creation of the legislature through statute. *People v. Hall*, 435 Mich. 599, 460 N.W.2d 520 (1990). This procedure is not essential for the probable cause determination required by the Fourth Amendment. *Gerstein v. Pugh*, 420 U.S. 103, 119-120 (1975). Therefore, any rights Petitioner may have by virtue of the preliminary examination statute are not rights guaranteed by the federal Constitution. *Id.* As a result, Petitioner does not have a constitutional right to a preliminary examination. Therefore, Petitioner is not entitled to habeas relief on this claim.

**H. Claims VII & VIII–Warrantless Arrest and Ineffective Assistance of Counsel**

Petitioner's habeas claim VII asserts that his warrantless arrest violated his Fourth Amendment rights, and any inculpatory statements he made while in custody were tainted by the illegal arrest, notwithstanding the fact that *Miranda* warnings were given. Petitioner contends that his statement to the police should not have been admitted at trial. Petitioner's habeas claim VIII asserts that both trial and appellate counsel were ineffective for failing to raise the issues of Petitioner's arrest was illegal and, if so, whether it tainted his confession.

Although Petitioner raised these claims in his motion for relief from judgment, he failed to do so in his appeal of right. As a result, the Michigan state trial and appellate courts denied leave to appeal on the basis of M.C.R. 6.508(D), which states: "[t]he court may not grant relief to the defendant if the motion ... alleges grounds for relief ... which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter ...." Where a state court denied relief on independent and adequate state procedural grounds, as the state courts did here, a prisoner may only obtain habeas review of such claims if he can establish "cause and prejudice," or that the failure to review the claims would result in a "fundamental miscarriage of justice." *Strickler*, 527 U.S. at 282. Petitioner alleges ineffective assistance of counsel as his cause for failure to raise these habeas claims in his appeal of right.

Federal habeas review is barred where a state court declined to address a prisoner's federal claims because the prisoner failed to meet state procedural requirements. In such cases, the state court judgment rests on independent and adequate state procedural grounds. *Coleman* v. *Thompson*, 501 U.S. 722, 750-751 (1991); *Harris v. Reed*, 489 U.S. 255 (1989); *Wainwright v. Sykes*, 433 U.S. 72 (1977). Petitioner raised these claims for the first time in his motion for relief

from judgment.

For a claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule and the state court must have also based its decision on the procedural default. *Simpson v. Jones*, 238 F.3d 399 (6th Cir. 2000). If a state prisoner defaults his federal claims in state court in a decision based on an independent and adequate state procedural rule, those claims cannot be viewed in a habeas proceeding. *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998). In order for the procedural default doctrine to apply, the last state court rendering a judgment in the case must have based its judgment on the procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Here, the Michigan Court of Appeals and Michigan Supreme Court, the last state courts rendering a judgment in the case, based their decisions to deny Petitioner's applications for leave to appeal the trial court's denial of his motion for relief from judgment on Petitioner's failure to comply with M.C.R. 6.508(D). Since the Michigan Court of Appeals and the Michigan Supreme Court were the last state court rendering judgment in this case, their decisions denying Petitioner's claims on the basis of a state procedural bar prevents federal habeas review. *Simpson*, *supra* at 407.

A federal habeas petitioner who fails to comply with a state's procedural rules waives his right to federal habeas review absent a showing of cause for noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation or some showing of a fundamental miscarriage of justice. *Strickler*, 527 U.S. at 282. Petitioner attempts to establish cause to excuse his procedural default by claiming that his appellate counsel was ineffective for failing to raise his claims in his direct appeal. Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel

under the criteria established in *Strickland v. Washington,* 466 U.S. 668 (1984).

In *Strickland*, *supra*, the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

Second, the petitioner must establish that the deficient performance prejudiced the defense; that is, counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.* To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

However, the mere failure to raise a claim, even if it is meritorious on appeal, does not constitute ineffective assistance of appellate counsel sufficient to establish cause to excuse a

procedural default. *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994). The United States Supreme Court, in *Smith v. Robbins*, 520 U.S. 259 (2000), explained:

> In *Jones v. Barnes*, 463 U.S. 745 (1983) [parallel citations omitted], we held that appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. See, e.g., *Gray v. Greer*, 800 F.2d 644, 646 (C.A. 7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")

*Smith v. Robbins*, 520 U.S. at 288. *See also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000) (where claim was not "dead bang winner," the petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

In this case, the record reveals that various issues were raised in Petitioner's direct appeal, but Petitioner's convictions were affirmed. In fact, both trial and appellate counsel raised the issue of Petitioner's statement to law enforcement: trial counsel filed a motion to suppress the statement prior to trial, and appellate counsel carried the issue through to Petitioner's appeal of right in the state appellate courts. Appellate counsel's decision to forego the issue of Petitioner's alleged warrantless arrest in favor of an alternative theory upon which to suppress Petitioner's inculpatory statement to police was strategic and does not constitute ineffective assistance of counsel. Petitioner is required to show that his appellate attorney was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 508 U.S. 975 (1993). Petitioner fails to demonstrate that the issues that were allegedly ignored by his appellate counsel in his direct appeal were clearly stronger than

those that were presented, and he has failed to overcome the strong presumption that his counsel was competent.

Since Petitioner has failed to establish cause for his procedural default, there is no need to determine whether Petitioner can meet the prejudice prong of the "cause and prejudice" test. *Smith v. Murray*, 477 U.S. 527 (1986); *Long v. McKeen*, 722 F.2d 286 (6th Cir. 1983). As such, Petitioner has failed to meet his burden of establishing cause and prejudice for his procedural default, and thus cannot establish a showing of fundamental miscarriage of justice. Therefore, the claim is not cognizable under federal habeas review, and Petitioner is not entitled to habeas relief on these claims.

## I. Evidentiary Hearing/Remand Claim

Finally, Petitioner asserts that he is entitled to an evidentiary hearing and/or remand on his habeas claims. The state court's decision, that Petitioner was not entitled to an evidentiary hearing regarding his ineffective assistance of counsel claims under Michigan law, is not subject to federal habeas review. *See*, *e.g.*, *Estelle*, 502 U.S. at 67-68. Further, given the Court's determination that the foregoing claims are without merit, Petitioner has not established that an evidentiary hearing and/or remand is warranted in this case. Therefore, Petitioner's motion for an evidentiary hearing and/or remand is denied.

## V. Conclusion

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED**.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: July 9, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 9, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290